**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

UNITED STATES OF AMERICA          CRIMINAL ACTION NO. 23-00180-01

VERSUS                            JUDGE S. MAURICE HICKS, JR.

SHANNON LAMON ANDERSON            MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is Defendant Shannon Lamon Anderson's ("Anderson") Motion
to Dismiss the Indictment. See Record Document 18. The Defendant moves to dismiss
the one-count indictment, under which he is charged with possessing firearms and
ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1). The United States of
America ("the Government") filed an opposition to the motion. See Record Document 20.
After careful consideration of the parties' submissions, and the law applicable before the
Court, Defendant's Motion to Dismiss the Indictment is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 9, 2023, a federal grand jury returned a one-count indictment against
Anderson. See Record Document 1. The count reads:

> On or about February 4, 2023, in the Western District of
> Louisiana, the defendant, Shannon Lamon Anderson,
> knowing he had previously been convicted of a crime
> punishable by imprisonment for a term exceeding one (1)
> year, did knowingly possess in or affecting commerce a
> firearm and ammunition, namely, a Taurus pistol, model: G2C
> (PT111 G2A), caliber: 9mm, and various rounds of
> ammunition, all in violation of Title 18, United States Code,
> Section 922(g)(1) and 924(e)(1).

Id. Thus, Anderson is charged with possessing a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1) See id.

In his Motion Dismiss the Indictment, Anderson specifically challenges the validity of Section 922(g)(1) as it purportedly "violates the Second Amendment's guarantee of 'the right of the people to keep and bear arms.'" Record Document 18 at 1. Section 922(g)(1) states:

> (g)It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Anderson argues that, under recent Supreme Court precedent in New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022), Section 922(g)(1) should be struck down as unconstitutional. See Record Document 18 at 2-3. He also argues that Section 922(g)(1)'s prohibition against felons possessing firearms is not supported by any enumerated power granted to Congress in the Constitution and lies beyond the reach of the Commerce Clause. See id. at 6-7.

In response, the Government argues that Bruen did not call into question felon-dispossession statutes and is therefore inapplicable in this case. See Record Document 20 at 1-2. Further, Bruen concerned firearm regulations aimed at "law abiding citizens" and not a statute, namely Section 922(g)(1), that has elements that limit itself to regulating non-law-abiding citizens. Id. at 3. The Government also argues that even if Bruen applied, Section 922(g)(1) would satisfy its historical tradition test. See id. The Government cites

to settled law as its grounds for rejection of Anderson's claim regarding the Commerce Clause element of Section 922(g)(1). See id. at 2.

## LAW AND ANALYSIS

### I.     Law

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, it is well-established that, ""[l]ike most rights, the right secured by the Second Amendment is not unlimited." District of Columbia v. Heller, 554 U.S. 570, 626 (2008). Thus, under the Supreme Court's most recent guidance in Bruen, courts must engage in a two-step inquiry to determine whether a regulation placing restrictions on a party's Second Amendment rights is constitutional. Bruen, 142 S. Ct. at 2129–30. First, a court must ask whether "the Second Amendment's plain text covers an individual's conduct." Id. If the Second Amendment does cover the individual's conduct, the court then must ask whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. Only where the regulation is "consistent with the Second Amendment's text and historical understanding" can it pass constitutional muster. Id. at 2131.

### II.    Analysis

#### a.   Heller/Bruen Inquiry

Under the first step of the Heller/Bruen inquiry, the Government argues that the Second Amendment's plain text and historical context indicate that felons like Anderson can be constitutionally disarmed. See Record Document 20 at 5. According to the Government, Bruen concerned firearm regulations aimed at "law abiding citizens" and not

3

a statute like Section 922(g)(1) whose own elements limit itself to regulating non-law-abiding citizens. See id. at 15.

Anderson argues that applying Bruen's standard, the plain text of the Second Amendment covers the possession of a firearm that Section 922(g)(1) criminalizes. See Record Document 18 at 3. He argues first that the amendment's term "'[k]eep arms' was simply a common way of referring to possessing arms" at the time of the amendment. Id. (citing Heller, 554 U.S. at 583). Second, he argues that he is one of "the people" under the Second Amendment's plain text. Id. (citing Heller, 554 U.S. at 581) (noting that the Second Amendment right "belongs to all Americans")). Anderson states that because the Second Amendment's plain text covers him as a member of "the people," the Second Amendment "presumptively protects" his possession of the firearm in this case. Id at 3.

In both Heller and Bruen, the Supreme Court included the qualifier "law-abiding" when discussing those people who are facially protected by the Second Amendment. See Heller, 554 U.S. at 635 (holding the Second Amendment confers the "right of **law-abiding**, responsible citizens to use arms in defense of hearth and home") (emphasis added); Bruen, 142 S. Ct. at 2134 (emphasizing that the petitioners were "two ordinary, **law-abiding**, adult citizens" protected as "people" under the Second Amendment) (emphasis added). The Heller Court apparently used this limitation to ensure that its holding would not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Heller, 554 U.S. at 626–27. Thus, this Court is of the opinion that Anderson, as someone who was a convicted felon after pleading guilty in 2021 to aggravated second degree battery and being sentenced

to six years at hard labor, all but eighteen months suspended, with three years' supervised probation and thus who is not "law-abiding," is not facially protected by the Second Amendment.

On the other hand, this Court acknowledges that "there is some debate over the extent to which the Court's 'law-abiding' qualifier constricts the Second Amendment's reach." United States v. Rahimi, 61 F.4th 443, 451 (5th Cir. 2023) *cert. granted*, 143 S. Ct. 2688 (2023). Rahimi did not involve a challenge to Section 922(g)(1). Instead, it considered a challenge to 18 U.S.C. § 922(g)(8), banning the possession of firearms by a person subject to a domestic violence restraining order. Id. In Rahimi, the Court stated that "Bruen clearly 'fundamentally changed' our analysis of laws that implicate the Second Amendment, ... rendering our prior precedent obsolete." Id. at 450-51. The Court went on to perform Bruen's textual and historical inquiry anew and found that § 922(g)(8) unconstitutionally breaches the Second Amendment right to keep and bear arms. See id.

This Court and other Fifth Circuit district courts in considering the constitutionality of Section 922(g)(1), post-Rahimi, found that because a district court is "not free to overturn" decisions of the Fifth Circuit, "the authority to determine whether the Fifth Circuit's pre-Bruen precedent regarding the constitutionality of Section 922(g)(1) has been overturned by an intervening change in the law lies with the Fifth Circuit alone." United States v. Thompson, No. 22-173, 2023 WL 3159617 at *4 (E.D. La. Apr. 27, 2023) (quoting In re Bonvillian Marine Serv., Inc., 19 F.4th 787, 789 (5th Cir. 2021) and citing its statement that "[w]hether an intervening Supreme Court decision merely illuminates or unequivocally overrules is a judgment call"); see also United States v. Jeffery, No. 21-437, 2023 WL 4629556, at *3 (W.D. Tex. July 19, 2023) ("[Because] this Court is bound

by a well-established line of Fifth Circuit precedent on Section 922(g)(1) that does not directly conflict with <u>Bruen</u>, this Court is required to adhere to that precedent until the Fifth Circuit or Supreme Court dictates otherwise"); <u>United States v. Hale</u>, No. 22-131, 2023 WL 3866865, at *1 (E.D. La. June 6, 2023) ("Neither <u>Bruen</u> nor <u>Heller</u> changed prior case law prohibiting non-law-abiding citizens from the right to bear arms"); <u>United States v. French</u>, No. 23-64-01, 2023 WL 7365232 at *3 (W.D. La. Nov. 7, 2023) (quoting <u>Thompson</u>, 2023 WL 3159617 at *4).

Another district court stated that although <u>Rahimi</u> briefly touched on the "obsolescence" of prior precedent, the Court may have referred to fundamental changes in its "analysis of laws that implicate the Second Amendment," not prior holdings. <u>United States v. Schnur</u>, 23-65, 2023 WL 4881383 at *3 (S.D. Miss. July 31, 2023). The <u>Schnur</u> Court stated it was convinced that it remains guided by the Fifth Circuit's treatment of Section 922(g)(1). <u>See id.</u> at *4.

Further, the Fifth Circuit recently held that the defendant did not establish plain error in his claim that § 922(g)(1) violated the Second Amendment.  <u>See United States v. Washington</u>, No. 22-10574, 2023 WL 5275013, at *1 (5th Cir. Aug. 16, 2023). The Court stated that it had yet to address the constitutionality of Section 922(g)(1), reasoning that <u>Rahimi</u> suggests that <u>Bruen</u>'s logic may not extend to Section 922(g)(1) as <u>Bruen</u> refers to "law-abiding" citizens in discussing the Second Amendment's scope. <u>Id.</u>; <u>see also United States v. Fulwiler</u>, No. 23-30152, 2023 WL 7118748 at *1 (5th Cir. Oct. 27, 2023) (stating "as a result of this lack of clear or obvious error, our court has repeatedly rejected plain error challenges to §922(g)(1) under <u>Bruen</u> in recent unpublished opinions," collecting Fifth Circuit cases upholding Section 922(g)(1) post-<u>Bruen</u>); <u>see also United</u>

States v. Forbito, No. 22-11026, 2023 WL 8274528 at *8 (5th Cir. Nov. 30, 2023) (same). This Court agrees with the conclusion in Schnur and the conclusion of the Fifth Circuit that it cannot ignore pre-Bruen Fifth Circuit precedent on the constitutionality of Section 922(g)(1) absent a Fifth Circuit or Supreme Court decision reaching the issue. See Schnur, 2023 WL 4881383 at *4.

Notwithstanding, this Court will analyze Anderson's motion under the second step of the Heller/Bruen analysis in an abundance of caution like other district courts post-Rahimi. Under step two, the Government argues that even if the Second Amendment were to facially protect Anderson as a convicted felon, prohibiting people like Anderson from possessing firearms under the historical context of the Second Amendment's plain text does not prevent Congress from disarming felons. See Record Document 20 at 5. This Court agrees and finds that the Government has met its burden of demonstrating that Section 922(g)(1) has analogues in our nation's history that justify the restriction on the Second Amendment right to bear arms in this case. See id. at 9-15.

Under the second step of the Heller/Bruen analysis, "the Government must point to 'historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation.'" Rahimi, 61 F.4th at 454 (quoting Bruen, 142 S. Ct. at 2131–32). "The Government need not identify a 'historical *twin*'; rather, a 'well-established and representative historical analogue' suffices." Id. (quoting Bruen, 142 S. Ct. at 2133). "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." Bruen, 142 S. Ct. at 2133.

The Government cites to a definition of a felony from 1769 which stated that a felony was "an offence for which occasions a total forfeiture of either lands, or goods, or both, at the common law; and to which capital or other punishment may be superadded, according to the degree of guilt." Record Document 20 at 9 (citing 4 William Blackstone, Commentaries on the Laws of England 95 (1st ed. 1769)). The Government also states that capital punishment and forfeiture of estate were also commonly authorized punishments in the American colonies (and then the states) up to the time of the founding. See id. at 14 (citing Folajtar v. Attorney General, 980 F.3d 897, 904-05 (3d Cir. 2020)). Further, the Government notes that many American jurisdictions up through the end of the 1700s authorized complete forfeiture of a felon's estate. See id. at 10 (citing Beth A. Colgan, Reviving the Excessive Fines Clause, 102 Cal. L. Rev. 277, 332 & n.275-276 (2014) (citing statutes)). A law in New York stated that a counterfeiter "shall be guilty of felony, and being thereof convicted, shall forfeit all his or her estate both real and personal to the people of this State, and shall be committed to the bridewell [correction house] of the city of New York for life, and there confined to hard labor." Id. at 11 (citing 2 Laws of the State of New York Passed at the Session of the Legislature (1785–1788) at 2661 (1886)). The Government also cited to cases from other circuits including the Sixth Circuit in Tyler v. Hillsdale County Sheriff's Department which stated that legislatures historically have authority to impose a firearms disability "as a legitimate consequence of a felony conviction." 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring in most of the judgment). Given this evidence, among more cited within its opposition, the Government argues that Section 922(g)(1) is consistent with the nation's historical tradition of firearm regulation that felons can be dispossessed of firearms. See Record

Document 20 at 15. The Court in <u>Schnur</u> considered similar evidence provided by the Government and found that given the historical support, Section 922(g)(1) passed constitutional muster under <u>Bruen</u>. <u>See</u> <u>Schnur</u>, 2023 WL 4881383 at *7-10.

This Court agrees and finds that Section 922(g)(1) passes constitutional muster under <u>Bruen</u>. Like the Court in <u>Schnur</u>, this Court also notes the virtual unanimity among the district courts in the Fifth Circuit upholding Section 922(g)(1) considering <u>Bruen</u>. <u>See</u>, <u>e.g.</u>, <u>Montes v. United States</u>, No. 21-38, 2023 WL 3688015 at *1 (S.D. Tex. May 26, 2023) (collecting cases upholding section 922(g)(1) after <u>Bruen</u>); <u>see also</u> <u>United States v. Gwinn</u>, No. 23-50, 2023 WL 8242711 at *1 (S.D. Miss. Nov. 28, 2023) (quoting <u>Schnur</u>, 2023 WL 4881383 at *10).

Additionally, Anderson argues that the *dicta* in <u>Bruen</u> regarding the continuing validity of the statutory prohibition against firearms does not control the outcome of this case and instead <u>Bruen</u>'s holding governs. <u>See</u> Record Document 18 at 5. The Supreme Court stated in <u>Heller</u> reiterated in <u>Bruen</u> that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." <u>Heller</u>, 554 U.S. at 626-27. Both Justice Alito and Justice Kavanaugh, who were joined by Chief Justice Roberts, expressed in their concurring opinions their explicit intent to leave undisturbed government regulations prohibiting the possession of firearms by felons. For example, Justice Alito stated: "Our holding decides nothing about who may lawfully possess a firearm ... Nor have we disturbed anything that we said in <u>Heller</u> or <u>McDonald v. Chicago</u> ... about restrictions that may be imposed on the possession or carrying of guns." <u>Bruen</u>, 142 S. Ct. at 2157 (Alito, J., concurring). Justice Kavanaugh's concurring opinion, joined by Chief Justice Roberts, provided additional support for felons in

9

possession of firearms restrictions in the wake of <u>Bruen</u>, stating, "Properly interpreted, the Second Amendment allows a 'variety' of gun regulations," <u>id.</u> at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) and quoting <u>Heller</u>'s statement that "[n]othing in our opinion should be taken to cast doubt on 'longstanding prohibitions on the possession of firearms by felons.'" <u>Id.</u> (quoting <u>Heller</u>, 554 U.S. at 626-27, 128 S.Ct. 2783). The dissent also viewed the majority opinion statements in the same way. Justice Breyer, joined by Justice Sotomayor and Justice Kagan, stated, "I understand the Court's opinion today to cast no doubt on" <u>Heller</u>'s treatment of laws prohibiting firearm possession by felons. <u>Id.</u> at 2189 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting).

Lower courts "are generally bound by Supreme Court *dicta*," particularly when the *dicta* are "recent and detailed." <u>Hollis v. Lynch</u>, 827 F.3d 436, 448 (5th Cir. 2016); <u>see also</u> <u>United States v. Becton</u>, 632 F.2d 1294, 1296 n. 3 (5th Cir. 1980) ("We are not bound by *dicta*, even of our own court ... *Dicta* of the Supreme Court are, of course, another matter."). Thus, because <u>Bruen</u> is binding precedent, and even if this language is characterized as *dicta*, at a bare minimum, it is entitled to great weight. <u>See</u> <u>Schnur</u>, 2023 WL 4881383 at n.6.

Thus, Anderson's Motion to Dismiss the Indictment is **DENIED** under the <u>Heller</u>/<u>Bruen</u> analysis.

### b.  Commerce Clause Element

Anderson also argues that Section 922(g)(1) exceeds the scope of Congress's power to regulate interstate commerce. <u>See</u> Record Document 18 at 7. Anderson concedes that this claim is foreclosed but brought it to preserve it for further review. <u>See</u> <u>id.</u> The Government argues that this Court should reject Anderson's argument based on

the interstate nexus element as it is settled law under the Fifth Circuit's holding in United States v. Seekins, 52 F.4th 988 (5th Cir. 2022). See Record Document 20 at 2. Anderson also cites to Seekins in his motion. See Record Document 18 at 7. The Court agrees with the Government. The Fifth Circuit and other circuit courts have consistently upheld Section 922(g)(1)'s constitutionality as a proper exercise of Congress's commerce power. See United States v. Mason, No. 23-36, 2023 WL 2589395 at *1 (N.D. Tex. Mar. 21, 2023) (citing United States v. Alcantar, 733 F.3d 143 (5th Cir. 2013); United States v. Daugherty, 264 F.3d 513, 518 (5th Cir. 2001) (collecting cases holding that § 922(g)(1) is a valid exercise of the commerce power); United States v. Gateward, 84 F.3d 670, 672 (3d Cir. 1996) ("We therefore join eight courts of appeal upholding the constitutionality of § 922(g)(1) as a valid exercise of the commerce power.")). Thus, the Motion to Dismiss regarding this element is also **DENIED**.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss the Indictment (Record Document 18) is **DENIED**.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 13th day of December, 2023.

S.MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT